We have three cases on the calendar this morning, an employee case, two patent cases from the TTAB. The first case is Crandall Griffin v. Department of the Navy, 2018-2072. The second case is Kevin Burns v. Department of the Navy, 2018-2072. The fundamental function of this Court is two-fold when it comes to federal employment, to ensure clarity of federal employment law and to ensure fairness in the decision-making both for the parties and particularly in this case for the petitioner. In this particular action, neither were honored by the judge and therefore we come to this Court with an appeal. But you have a client who got 15 speeding tickets in a foreign country and he was demoted and suspended, not removed, and that kind of behavior causes problems anywhere but particularly in a foreign country, and so where was the problem? There were a couple of problems with the decision. Were they speeding, 15 speeding tickets? No, no. There were actually seven tickets that were charged, not 15. That's one of the issues. Yeah, but they weren't all speeding tickets. No. Some of them were failures to yield, one was a minor bumping accident where he rear-ended somebody in a parking lot. But there was at least one parking violation in there, wasn't there? There was one parking violation. These weren't speed, the only speed, there were no, one of the problems with the idea of the 15 and the speeding and the outrageous of the conduct is there's a couple of problems with that. First of all, there were only seven tickets that were charged and not all of them were speeding. Most of them were off base. Only one involved more than 20 miles over the speeding limit and none ended with a reckless driving charge. None had an injury, none had intoxication. So these are the type of traffic infractions that while there is some frequency to them, certainly, that many of us earn over the course of time. And so therefore, as we put in our brief, they're not disciplinary actions. One does not get disciplined for an off-base failure to yield. One does not get disciplined for off-base conduct. What happened here is that your client faced a point of accumulation that caused his license to be suspended or revoked. Correct. And that's the problem. It's not the nature of the traffic ticket, it's that your client's license was suspended and can he do his job that he had as the director of the NCIS in a foreign country with no license? Well, let's look at this actual circumstances of what happened. The license that was suspended was his license to drive on a DOD installation in Japan where he was transiting out three weeks later. When he originally went to this hearing, as you can see from the form, it's Appendix 1147, the only thing that happened is he appeared before a Navy chief who asked him if he had these items and he said yes, and they told him you were going to have your Japan-based opportunity suspended. To him, that was about three weeks of time he was transiting out. The NCIS itself didn't even understand whether or not that would apply to the United States. And the NCIS regulations do not require a DOD driver's license. They require a state driver's license, which he's always maintained. Assume... Once his license was suspended, it was effective to all bases in the United States. Correct, but there was no requirement that he drive his vehicle. What I don't understand is the argument that he doesn't need a license. He can still be the director of the NCIS and not drive, that his wife can take him to emergencies and things of that nature. But we're conflating and confusing certain things. First of all, the NCIS could impose a requirement that you have a DOD installation license. It can give you a service vehicle like the FBI, the DEA, or the Marshal Service that requires you to respond whenever and you have the emergency equipment to do so. The NCIS does not require that, does not require you to drive your car to work. Most of the people that went where my client was stationed here in the U.S. went to the Pentagon, which I think we can take judicial notice of, has an actual metro station. So he was not required to bring his vehicle. Does he have a, he had a Virginia driver's license, right? Yes, yes. Was that Virginia driver's license valid on bases or for driving overseas? The Virginia driver's license would give him the opportunity to drive. The restriction would be that once he reached the post itself, he would not be authorized to bring that vehicle on if his license was in suspension for the DOD installation. So technically speaking, he could not drive his car on to the Pentagon itself. But I think, again, one of the things... And yet I can drive with a Virginia license on to a military base. Right, right. I am not sure whether or not that would apply to restricting him to enter the base or not. That was not an issue that was raised. It was not an issue that was discussed. And I think the important thing for the court is to recognize is I'm not quite sure why he was punished. Was he punished for the revocation or was he punished for the tickets? Because the court never made that clear. And so we have two arguments. We have a nexus and a notice argument. And on the nexus, yes, losing your license to drive for a year on a military base is certainly embarrassing. But this individual was not required to have that DOD license and he was not required to operate a vehicle on the base. There is no showing from the government, which has the burden of establishing the notice, that he was required to bring this car here. If he was... Well, what about... What do you say to the missions and the functions for NCIS, Federal Law Enforcement? He's a federal law enforcement agency. Part of the mission is to defend against terrorism and foreign intelligence threats, to investigate major criminal offenses, provides law enforcement security services. He's a chief law enforcement officer, isn't he? Right. And he did all those functions. And you're saying he doesn't need to be able to have to drive to an emergency or to be a person? Well, if he was working during the day, one would assume that if he drove to an... First of all, there's some confusion here as to whether or not the agency has argued... But this is substantial evidence we're looking at. Right. But the substantial evidence has to be that that is true, that he is required to be an emergency first responder, which he is not. He is an investigator that investigates crimes. Well, I think he's required to protect and defend against terrorism and foreign intelligence threats to investigate major criminal offenses. It seems to me that that's substantial evidence that a driver's license is required by this particular officer to be able to fulfill that mission. But he had a driver's license. I mean, I think the issue is that the only requirement the agency imposed was a valid state driver's license. So the notice to the individual is, in order to do this job, you have to have a valid state driver's license. At no point did my client not have a valid state driver's license. I think there's some confusion here, and I intend to ask the government about it. But it seems to me that in the hierarchy of the military and its investigative entities, that the person at the top is not generally the pointy end of the spear. Correct. Well, that's the point. I mean, the director of the FBI is literally a law enforcement agent. I don't think I would expect him to drive to a scene of a shootout and engage in firefight there. And nor would my client be required to. What I want to say is that if NCIS wants to impose that level of obligation, then give my client a service vehicle, make him have a license to go anywhere, give him emergency equipment, make him respond to crisis situations. They did not. I imagine that if, like any law enforcement officer, that if your client is on the scene and an event occurs, that it's his obligation to respond just like it is anyone. Correct. Correct. Right. And the only, the interesting thing is that the government in it, as proof, points to a Washington Post article, which I didn't know was proof, but the Washington Post article sums it up. It talks about the Navy shooter incident. The only reason NCIS responded, because they were literally in the building where the shooting occurred. Okay. The people that responded in the article were the FBI and the Metropolitan Police Department. Why? Because they are first responder law enforcement agencies. NCIS agents are not. If they were, they would have a different criteria. They would have different obligations. And the understanding- Your client carried a firearm, I guess. Yes. All 1811 series agents carry a firearm. But my client engages in it sometimes in investigations that can cause dangerous circumstances. And as a supervisor, he would normally go with other agents and be accompanied. He wouldn't normally respond to himself. And again, how is this supposed to be legitimate? If I don't require you to bring your car to work and there's a shooting at Quantico, how do you anticipate I'm going to get down to Quantico if I'm not required to bring my car? I have to get on the Metro, go back to my house, drive my vehicle to Quantico. That's the reality of what happened here. So that the agency, in order to justify this result, which was a little unclear, if you look at the opinion, I'm not quite sure, again, what he actually got punished for. Was it the revocation of the license on the DOD base? Because then he got no notice that that would result in discipline, or was it the accumulation of tickets? Because he also got no notice that that accumulation of tickets would result in discipline. And because of that, he did not get the notice that he needed to get. And the second thing is, the question is whether there is a fundamental nexus. The cases cited, I think we need to focus on the severity of the cases that are cited by the judge herself, the administrative object. She cites Brown, which is a case where somebody who worked for Marine Welfare, the Marine Corps Welfare and Recreation Department, had an extramarital affair with a deployed Marine. So their job was to bring the message to help families who had people deployed, and he had an affair with someone. That was contrary to the mission. In Allred v. Department of Health and Human Services, it was child molestation for a gentleman who was in an agency charged with protecting children. The court found that that was nexus to federal employment. In Giles v. United States, it was an IRS agent who was delinquent in his own tax returns. Your problem, I think, is that the reviewing person looked at it all and said, and the ALJ, and said, oh, this makes the agency look bad, you know, he's overseas, he gets tickets, but they don't articulate that. Well, they didn't, and that's my fundamental point with the whole decision. I don't know whether or not, in the end, and I'll be honest, I don't know whether or not in the end, this rises to the sufficiency for the punishment. If there was notice, if he had some understanding that these things would result in this. But in this opinion, everything's backwards. Oh, we did this, now we're going to figure out a reason why. And in the courts, one of the things I want to impress upon the court is another fundamental function you have is to address the propriety of a judicial decision. And this judicial decision is improper. It calls his defenses laughable, it calls him preposterous, it insults him personally. That suggests to me that that judge stopped listening the minute she saw the charges. And we know that because she uncritically accepted things like LEP, LEAP pay, means that he's an emergency first responder. It has nothing to do with that. LEEP is designed to take care of the overtime requirement that would otherwise apply to law enforcement agents who need to be reasonably available. So my problem with the opinion is not, I think you've, Judge Wallach, you've highlighted my problem with the opinion. I do not know at the end of the day whether NCIS tomorrow could pass a series of regulations saying this would result in discipline. And maybe that would pass muster. I do know that this, in this case, and you can't sit there and punish somebody and say, well, you should have known when we say, well, where is the regulatory authority of the notice that he's supposed to get? What do you mean he should have known? He should have known that his actions could lead to some sort of a punishment or discipline. Right. I mean, the- Here's, setting aside the violations and also the tone of the opinion, which I agree with, I have problems with that too. Setting that aside and looking at what we're here to discuss, the deciding official found that Mr. Griffin demonstrated poor judgment and decision making, which is not congruent with expectations of senior NCIS management. And when your client got his first ticket, then his second, then his third, and he keeps going, he gets seven tickets in all, and he's accumulating points. He's a senior law enforcement officer. I think he, I think there's substantial evidence that he had noticed that his actions were leading towards discipline. How? How would he have noticed that if the government doesn't tell him? I mean- It's not even in the table of penalties. It stands to reason that if I, for example, get a ticket and I get three points on my license as a driver, I know I have X amount left. Next week I get another. Third week I get another. Then I should be exercising some sort of judgment as a licensed driver to, and I would know that pretty soon my license is going to be suspended. And your punishment is in the civil administrative body that handles traffic. In other words- Yes, but now we have the agency looking at that activity and saying the series of steps, putting aside the suspension of a license and everything, the series of steps indicate poor judgment. But how- It's not congruent with an NCIS officer. I don't understand how picking up- That's substantial evidence. Well, but I don't understand how that argument could be phrased when the agency's own regulations say that traffic tickets are not disciplinary in nature. I understand that there's a penalty- So setting that aside, the traffic ticket itself, and looking at this substantial evidence here that the deciding official, he sustained the proposed suspension on the basis of poor judgment. But there was- But I don't understand how the judgment was necessarily poor, okay? He didn't turn appropriately on one of them. Well, you're pointing a different interpretation than the deciding officer and what we have before us. But substantial evidence, I think, supports that decision. But they didn't take the action based on his tickets. I would understand that if they said, the reason we're doing this is because you accumulated traffic tickets. They took the action only based on the revocation. The only issue that they raised was the- No, they took it- Sir, they took- I just started reading to you. They took it on the basis of demonstrated poor judgment in decision-making that's not congruent with the expectations of senior NCIS management. That's different than the ticket. Well, but I don't- Again, I want to go back, and I only have a few seconds. I want to go back to the- You don't have a few seconds here, counsel. Your red light is on, and you've confirmed all your- Oh, I have. It says 26 here, but that's okay. Let's hear from the government. We'll give you two minutes of rebuttal time. Good morning, your honors. May I please the court? Is it reversible error if the AJ relied on traffic tickets that Mr. Griffin received outside the 24-month period associated with his suspension? Your honor, the administrative judge did not rely on traffic tickets outside of the two-year period. She only looked at those traffic tickets when it came to penalty. So, with respect to looking at the Nexus requirement, she was limited to just the seven infractions we're talking about. And I want to remind the court and raise for the record that there were seven traffic infractions, four of which were speeding, two of those were on-base, and two of those were off-base. So, I don't want to minimize sort of the severity or the egregiousness of the number of traffic infractions occurring over a two-year period of time. In the red brief at 27, footnote 12, you say it's permissible for the AJ to look at all 15 traffic violations? For the purposes of penalty. So, under the Douglas factors, for the purposes of penalty, she's able to look at past disciplinary record, past performance, et cetera. And so, for Nexus, she did not look at that. She was limited to seven traffic infractions we're talking about here. And again, the misconduct was not necessarily just getting the tickets. The misconduct was the accumulation of the tickets, which led to the revocation of driving privileges in a host nation. And so, the 15 tickets only come up when she's discussing penalty under the Douglas factors. Yeah, I'm looking at 317 in the appendix, which is the Navy's table of penalties. Yes, Your Honor. That, let me ask you a few questions about that. Was Mr. Griffin ever disciplined for any of his traffic infractions? He did not receive specific discipline from the agency for these seven traffic infractions, no. He did get prior discipline, I believe in the form of a 30-day suspension back in 2009. And that was for misuse of a government vehicle. And it involved... And I'm asking you about these. Okay, about these seven. He didn't receive specific discipline for these seven. Was he disciplined for his traffic infractions in successive order with increasingly severe punishments? I'm sorry, your question? Was he disciplined for his traffic infractions in successive order with increasingly severe punishments? He was not. So, the guide that we're looking at here at Appendix 317 is in fact a guide. It's not mandatory. It knows that supervisors are held to a higher standard. He's also held to a higher standard as a law enforcement official. But even looking at this table of penalties... How about answering my questions for me? Absolutely. Okay. Where on this penalty chart does the revocation of a DOD driver's license fall? So revocation of DOD driver's license is not listed here specifically. The agency looked at the bottom of page 317 at any traffic regulation, violation of a traffic regulation that caused injury to yourself or others, or damage to property or endangered safety of others, or that didn't cause injury or property damage and didn't endanger the safety of others. And in that case, a reprimand to removal was appropriate for anything, a traffic infraction that could have caused damage, injury or damage to yourself or to others. Did his traffic infractions endanger the safety or damage the property of Mr. Griffin or others? He did not damage the property of anyone else, but the agency would argue that there was a risk involved in that four of those tickets, again, were speeding tickets and one was an accident. And so the agency looked at this and they believe the misconduct fell under conduct that could cause injury to yourself or others. Is it reversible error that AJ failed to distinguish between conduct that occurred while he was on duty and off duty? I don't believe it's reversible error, Your Honor. Okay. What's your authority? I'm sorry. Your question? What's your authority? It wasn't reversible error because here on the chart of penalties, it says on or off duty. And so they could be considered under the chart of penalties together. And that's what the administrative judge did here and that's what the agency did. So the seven infractions, there were a mixture of on and off duty violations. And remember, even though he was off duty, he was in Japan as an NCIS special agent. That's the entire reason he was in the host nation. Did AJ make any distinction between the tickets he received on base, which don't involve the major nations, and the ones he received off base, which, of course, involve Japanese law? Not that I'm aware of, Your Honor. I do not believe she made a distinction that AJ was focused on the accumulation, the misconduct that was considered the accumulation of the traffic ticket, which led to the revocation of driving privileges. And again, not just in Japan, but the revocation of driving privileges on military bases worldwide. Okay, in the red brief at three, you include an explanation of what an emergency situation, emergent situation, you say, is, what it might entail, terrorist actions, active shooter incidents, natural disasters, and so on. Who's the primary responder in those situations? So, in those situations, when NCIS is involved, that's a naval facility, NCIS is responsible for responding to threats, et cetera. There may be others, like the police, who are responsible for responding. Who's the primary responder in those situations? I'll restate my question again. Your Honor, I'm unaware, depending on where the location is and what the situation is, I believe that can change. And so, I can't stand here and unequivocally tell you who would be the considered first responder. And I'd note that the AJA did not use the language first responder. That language was introduced by Special Agent Griffin's brief. The language of first responder was not used. What language was used was emergent crisis, defend against threats, and again, federal law enforcement agency. The mission of NCIS itself states that it's a federal law enforcement agency. So there's no, it's undisputed that the misconduct, which was the disregard for the law in a host country, and the agency's mission, which is law enforcement, that is where the administrative judge found a complete nexus between the misconduct and the agency's mission. And the agency's mission is undoubtedly federal law enforcement. It's listed in the mission statement itself at Appendix 493. So in the red brief at 14 and 15, and this is sort of curiosity on my part, really. You note that a traffic ticket, receiving a traffic ticket is contrary to his mission as a law enforcement officer. Does that apply to DOJ as well? Well, unfortunately, I learned yesterday that a DOJ employee who accumulates a large number of tracking tickets would absolutely have a problem, that it run contrary to our law enforcement mission. What's the citation for that? I don't have authority for that, Your Honor, but I'm happy to get it for you. As I say, that was curiosity on my part. In the red brief at 16, you rely on testimony that asserts that LEAP payments are intended to ensure a special agent is available at any time to respond to emergencies. The quote is, NCIS agents must be able and are paid a special supplement to respond to emergencies at any time. That's false, isn't it? No, Your Honor. I'm sorry. Where are you reading from? Page 16? Yeah, from the testimony. From the testimony quoted on page 16? From the deciding official and the opposing official. Yes, Your Honor, that is not false. Law enforcement agents do receive LEAP pay. LEAP pay for a supervisor is so that they'll respond at any time. So they'll be available to respond at any time or according to the agency's needs. And so special agent Griffin received 25% above the salary that another federal employee at that rate will receive to be available. That's availability pay. It's not responder pay, is it? I'm not sure I know the distinction, Your Honor. Really? That pay is for law enforcement officials. As was conceded, he carries a firearm. Okay, let me put it this way. It's not first responder pay. No one has called it first responder pay, but it is availability pay for him to be available under the mission to respond to thefts and crisis as they arrive and as the agency needs. Do you know anywhere in the regs where it says an NCIS agent has to be available as a first responder 24-7? The words first responder do not appear anywhere in the regs, Your Honor. But the testimony here was clear that he needs to be available outside of business hours. Excuse me, I'm talking. That's where the AJ goes astray among a number of others. Do you disagree with that? I think the administrative, I think the strategy here is to dissect all of the findings made by the administrative judge, some of which were unnecessary to find a NCIS. Some of which came close to scandalous if they were in a complaint. I would proffer, Your Honor, that the administrative judge had to make or make a determination regarding NCIS. The administrative judge found that there was indeed a NCIS based on the misconduct being inconsistent with the mission of the agency. Nothing further was required. Even under the law, job performance was irrelevant. All these other things that are being introduced were findings she made in response to arguments raised at the hearing by Special Agent Griffin, but they weren't necessary to find a NCIS. I think the government's strong position is what I said to your friend on the other side. And that is, there's a bad flavor when the host country is seeing somebody pretty high up doing minor things. I mean, assume that they're not, there's no real damage, that he's only going 10 miles an hour plus, he's going 15, 25 in a 15 zone or whatever, you know. But I agree there's a bad flavor to that, which can make the NCIS look bad. The problem with that is, that's not what the AJ did. Well, the AJ did make specific findings that the agency was embarrassed. And so again, I think the AJ went beyond what she needed to do for a finding of NCIS. I don't think she fairly articulated it that way, though. Is it also your argument that we review decisions, not opinions? That you review the decisions, not opinions. Yes. And so, at issue here is the decision of the MSPB, and the MSPB found that the agency established a NCIS, and that the penalty of demotion, not removal, the progressive discipline of demotion was reasonable. And we believe that the administrative judge and the MSPB got it right. Well, they got it right because that opinion is, that decision is supported by substantial evidence. Absolutely. Even the additional findings, which again, were above and beyond what was required for NCIS, and were made to respond to arguments raised by Spatial Agent Griffin at the hearing. Even those additional findings, including that the agency was embarrassed, were supported by substantial evidence. There were agency witnesses who testified that the agency was embarrassed. He was the second highest ranking official in the host nation. There was clear testimony that Japanese police issued a number of one of those tickets, a number of those tickets. And so, there's no question that the agency was embarrassed. And that substantial evidence supports those findings, even though they were in addition to the necessary findings that the mission of the agency. And am I correct that a general charge here was conduct on becoming an officer? Yes. Which was then defined as blatant disregard for the law in a host nation. And that was based on the accumulation of a number of traffic violations over a two-year period. And I know, you know, Spatial Agent Griffin had been there since 2011. These tickets started in 2014. So the argument that he misunderstood a sign, et cetera, really doesn't hold much weight or is without merit when he was there for three years and able to evade a law perfectly. And then for some reason, for two years straight, he consistently accumulated a number of traffic infractions. Mr. Honor, we would submit that the decision is sound, that it's supported by substantial evidence, and that this court should affirm the decision that substantial evidence supports the nexus was established and that the penalty of demotion was reasonable. What are we to do about the AJ's terrible opinion? I'm not sure what to do, Your Honor. Unfortunately, there is no mechanical guide for the AJs on how to write these opinions. And this comes up more often in the Douglas factors, whether they consider the factors, et cetera. In the case law, it's clear that they don't have to go through every single thing mechanically. So I'm not sure what we impose on the administrative judge, but I think what we do is focus on the findings that were made. And the findings that were made are all supported by substantial evidence. And so even if they're not in a proper order or if there are additional findings made that didn't need to be made, particularly in response to arguments that were raised, they're still supported by substantial evidence. And that's our standard. And so I think this court has to affirm. Thank you, counsel. Thank you, Your Honor. Mr. Burns, two minutes. Two minutes for voting. I think I had three, but I'll go with that. Well, you well exceeded your total time. Okay. All right, thank you, Your Honor. It's a matter of grace giving you two minutes. Thank you, Your Honor. A couple of things I just want to say. In terms of the 15 versus the seven, if you look at the judge's opinion, she decided on the penalties appropriateness based on the communications by the two senior persons who said they were embarrassed. So all things flowed together. She didn't dice that out. So she did take into account the 15 tickets in actually finding both nexus and a penalty. As we pointed out in our brief, she didn't take into account many of the Douglas factors appropriately. The other thing we wanted to point out is the idea of embarrassment. We actually asked the officials themselves whether they were embarrassed, and they could not confirm that. And in fact, again, the distinction I want to make is he was never punished for getting the traffic tickets directly. He was punished for the revocation of the license. And I know that tickets flow into that, and we can blend that. But we need to be a little bit clearer about what he was punished for, because this punishment wasn't imposed in Japan. There was no embarrassment in Japan. There was no Japanese official calling up saying we were embarrassed by what you did. There was no repercussions of that other than paying fines. If getting traffic tickets were a sign of poor judgment, frankly, I don't think I could practice law, especially with the speed errors. Lawyers don't have to have good judgment. Obviously not, Your Honor. But what I'm trying to say is that that's a little bit of a stretch, particularly when you're talking about nexus for federal employment, which requires something a little more substantial. The final thing I'll say, and I want to conclude on this, because I think it is important. What can you do? Because I think that's important, however you rule. An opinion like this shouldn't go unchastened. No judge should denigrate in the manner that Mr. Griffin was denigrated in an opinion the way this was done. And this court does have a responsibility. So I urge you that even if you decide against this, that you mention that in the opinion because I represent federal employees who come there for their version of justice. And none of them should be belittled for seeking the opportunity to do so. Thank you, Your Honor. Thank you, counsel. Case is submitted.